UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TRACY L.S., §<br>    PLAINTIFF, §<br> §<br>V. §<br> §<br>COMMISSIONER OF SOCIAL §<br>SECURITY ADMINISTRATION, §<br>    DEFENDANT. § | CASE NO. 3:20-CV-1183-X-BK |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). She seeks benefits retroactive to June 2017. Doc. 18-1 at 14. Pursuant to 28 U.S.C. § 636 and *Special Order 3*, before the Court for findings and a recommended disposition are the parties' cross-motions for summary judgment. Doc 21; Doc. 26. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, and this case should be **REVERSED AND REMANDED** for further proceedings.

I. BACKGROUND

   A.   Facts

Plaintiff was 46 years old on her alleged disability onset date. Doc. 18-1 at 26. She completed a year of college and had past relevant work as an administrative assistant and secretary. Doc. 18-1 at 26, 39. In terms of her relevant medical history, the evidence reflects that Plaintiff has a long history of chronic psychological issues, including major depressive

disorder, severe with psychotic features, bipolar disorder, panic disorder, borderline personality disorder, racing and intrusive thoughts, anxiety disorder, schizophrenia, the inability to meet her basic life and health needs, suicidal thoughts, paranoia, and auditory and visual hallucinations when in a manic phase. *See, e.g.*, Doc. 18-1 at 56; Doc. 18-1 at 268, 290, 295, 306, 309; 340-41, 362-63. Her condition appears to have deteriorated after she was fired from her job in June 2017 due to chronic tardiness and absenteeism. Doc. 18-1 at 335, 340, 347, 349, 357, 406.

At times, Plaintiff's thought process was linear and goal-directed, her memory was intact, she was "capable of reality based thinking," her cognitive functioning, insight and judgment were intact, her mood was appropriate, and she was fully oriented. Plaintiff also reported on occasion that her medications were working well, she was engaging with others in group therapy, and was "getting better" and looking for a job *See, e.g.*, Doc. 18-1 at 309, 338, 369, 383, 411, 414, 417, 420, 452, 501, 546.

Often, however, Plaintiff reported that she was not showering or taking care of her basic needs, had panic attacks, felt anxious and depressed, scratched or cut her skin until she bled, had mood swings, felt she was in a "downward spiral," and was sleeping too much. *See, e.g.*, Doc. 18-1 at 347-48, 353, 357, 499, 504, 510; Doc. 18-1 at 793, 798. Plaintiff additionally did not show up for medical appointments several times, stating that she had difficulty keeping appointments and maintaining plans. *See, e.g.*, Doc. 18-1 at 810, 816, 819, 822, 828, 830. Plaintiff also has been hospitalized for depression and suicidal thoughts on a number of occasions. Doc. 18-1 at 316-17; Doc. 18-1 at 353, 356; Doc. 18-1 at 551. At one point, Plaintiff was hospitalized for nine days and reported that she heard people talking through the television, watching her through her computer, and hacking her phone. Doc. 18-1 at 268, 294, 309, 348.

As a result, she unplugged all of her televisions and covered the cameras on her electronics. Doc. 18-1 at 353.

Dr. G.A. Jason Simpson, Psy.D, performed a consultative psychological exam on Plaintiff in January 2018. Doc. 18-1 at 430. Dr. Simpson found Plaintiff's mood and cognitive function to be normal, she was able to take care of her activities of daily living, complete tasks and follow instructions, her abstract reasoning and concrete abilities were average, and her memory was intact. Doc. 18-1 at 431-32. Dr. Simpson rated her prognosis as fair to good, dependent on medication management and continued group and individual therapy. Doc. 18-1 at 433. Dr. Simpson noted, however, that Plaintiff may continue to have "occasional episodes" and will need to plan for them for safety reasons and the impact on her overall life. Doc. 18-1 at 433.

In May 2018, Dr. David I. Kabel, D.O., conducted a consultative psychiatric evaluation on Plaintiff. Doc. 18-1 at 551. Plaintiff denied hallucinations but acknowledged some paranoid delusions. Plaintiff was fully oriented, and her thought process was "basically logical" although she reported becoming suicidal earlier in the year. Doc. 18-1 at 552-53. She stated that she had a lifelong history of losing jobs because of her mood disorder. Doc. 18-1 at 553. Dr. Kabel diagnosed Plaintiff with bipolar mood disorder with some residual psychotic symptoms. Doc. 18-1 at 553. His prognosis was guarded given Plaintiff's limited response to the many medications she had tried, and he concluded that he doubted "she would be able to work in a competitive environment." Doc. 18-1 at 553.

Plaintiff received medication management services from advanced registered nurse practitioner ("ARNP") Linda Fortmeier-Saucier. Doc. 18-1 at 489. In May 2018, ARNP Fortmeier-Saucier noted that Plaintiff was unable to work and, while her disabilities of anxiety

disorder and bipolar disorder were not permanent, they were expected to last more than six months.  Doc. 18-1 at 514.

In April 2019, Plaintiff reported she was feeling depressed and experienced occasional psychotic symptoms and mania.  Doc. 18-1 at 776.  She was having delusions that, for example, her prior boss was in love with her and that he wanted to work with her again because she saw a hidden message on a cup in a store.  Doc. 18-1 at 803.  Plaintiff also reported that she had difficulty fulfilling responsibilities to her family, including her mother and daughter.  Doc. 18-1 at 798, 803.

That same month, another of Plaintiff's treating providers, ARNP Olukemi Adeogun, completed a medical assessment of Plaintiff's ability to do work-related activities.  Doc. 18-1 at 769.  ARNP Adeogun indicated that Plaintiff had a poor ability to (1) follow work rules, (2) relate to coworkers, (3) interact with supervisors, (4) deal with work stress, (5) function independently, (6) maintain attention/concentration, and (7) follow complex or detailed job instructions.  Doc. 18-1 at 769-70.  Plaintiff was assessed as "fair" at dealing with the public, exercising judgment, and handling simple job instructions.  Doc. 18-1 at 770.  ARNP Adeogun stated that the medical findings which supported her opinion included Plaintiff's chronic mood instability, anxiety and insomnia, ongoing difficulty with interest and lack of motivation, and a history of suicidality with no attempts.  Doc. 18-1 at 770.  Plaintiff informed ARNP Adeogun that she had been fired from work for tardiness and being argumentative.  Doc. 18-1 at 770.

**B.**     **The ALJ's Findings**

In June 2019, the ALJ ruled that Plaintiff not disabled under the Act.  Doc. 18-1 at 27. The ALJ found that Plaintiff had the severe impairments of obesity, major depressive disorder, and general anxiety disorder, but her impairments failed to meet or equal a listed impairment for

presumptive disability under the applicable regulations. Doc. 18-1 at 16-17, 19-20. Next, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with a variety of restrictions based on her mental health. Doc. 18-1 at 21-22. The ALJ concluded that while Plaintiff was unable to perform her past relevant work, she was capable of performing other jobs existing in significant numbers in the national economy. Doc. 18-1 at 26-27.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or

5

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not obligated to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III.  ARGUMENT AND ANALYSIS

Plaintiff asserts, *inter alia*, that the ALJ did not properly evaluate all of the medical opinions of record with respect to her mental capacity because she gave less weight to Plaintiff's treating and examining sources in favor of the opinions of non-examining and non-treating state

6

agency medical consultants. Doc. 21 at 10-15. Further, Plaintiff contends, the ALJ did not consider whether she could maintain employment on a regular and continuing basis. Doc. 21 at 12-13. Defendant counters that the ALJ properly evaluated the medical opinions in the record and was not required to determine whether Plaintiff could keep a job on a continuing basis. Doc. 26 at 5-6.

The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986) (citation omitted). "A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs." *Id.* at 822. Rather, a finding that the claimant can hold a job for a significant period of time is also required, and that determination must be supported by medical evidence. *Id.*

An ALJ need not always make a separate finding that a claimant who is capable of performing a job can also maintain that job. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). Sometimes, however, the nature of a claimant's medical impairment and attendant symptoms might require "separate consideration of whether the claimant is capable of maintaining employment." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (per curiam) (citing *Watson v. Barnhart*, 288 F.3d 212, 217-218 (5th Cir. 2002)). Separate consideration is necessary, for instance, when "the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Furthermore, "in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or

7

severity to prevent the claimant from holding a job for a significant period of time." *Id*. The *Frank* court gave an example of the type of situation that might require a separate finding that a claimant is able to maintain employment: "For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because every number of weeks she lost movement in her legs, this would be relevant to the disability determination." *Id.* at 619.

Ascertaining whether a claimant is disabled because of a mental condition, however, can be a "difficult task." *Singletary*, 798 F.2d at 820. In some cases, a mental impairment is so severe that the claimant is presumed to be incapable of working. *Id.* (citation omitted). Frequently, however, a claimant is capable of finding a job and working for short periods of time but is unable to remain employed for a significant period of time due to the nature of the mental impairment.

> Unlike a physical impairment, it is extremely difficult to predict the course of mental illness. Symptom-free intervals, though sometimes indicative of a remission in the mental disorder, are generally of uncertain duration and marked by an impending possibility of relapse. Realistically, a person with a mental impairment may be unable to engage in competitive employment, as his ability to work may be sporadically interrupted by unforeseeable mental setbacks.

*Id.* at 821 (quotation omitted).

In *Singletary*, for example, the court held that while the claimant may have been able to find any number of jobs and maintain the position for a short period of time, the nature of his mental impairment rendered him unable to remain employed for any significant period of time. *Id.* at 821-22. Indeed, the claimant's personal history indicated that he was never able to hold a job for long periods of time, and every doctor who examined him had determined that he

suffered from various mental disorders and exhibited poor judgment and insight as well as an inability to relate socially and antisocial tendencies. *Id.*

While evidence of "good and bad days" does not establish an impairment necessitating an explicit finding under *Frank*, *see Perez,* 415 F.3d at 465, the evidence in this case was not so limited. Plaintiff's doctors noted the drastic fluctuations in her mood, and she was in fact diagnosed with bipolar disorder among a litany of other psychological problems. Doc. 18-1 at 335, 340, 347, 349, 357, 406. "By its very nature, Plaintiff's bipolar disorder fluctuates between manic and depressive states with periods of apparent stability." *Cline v. Astrue*, 577 F. Supp. 2d 835, 850 (N.D. Tex. 2008) (citing American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* at 386 (Text Revision 4th ed. 2000) (recognizing that persons with bipolar disorder experience mood shifts from high to low and back again in varying degrees of severity)). What's more, Plaintiff's treating providers and Dr. Kabel all expressed doubts about her ability to work. Doc. 18-1 at 514, 553; Doc. 18-1 at 769-70. Plaintiff herself reported she had a long history of losing jobs because of her mood disorder and failure to report for work on time or at all. Doc. 18-1 at 335, 340, 347, 349, 357, 406; Doc. 18-1 at 553, 770.

Under these circumstances, the ALJ was required by *Frank* to specifically assess Plaintiff's ability to hold whatever job she may find for a significant period of time. Because Plaintiff's mental impairment waxes and wanes in severity, the ALJ's RFC determination does not include the necessary finding. *See Frank*, 326 F.3d at 619. By failing to make the specific determination required by *Frank*, the ALJ committed legal error. *Moore v. Sullivan*, 895 F.2d 1065, 1069-70 (5th Cir. 1990). The Court of Appeals for the Fifth Circuit has left lower courts no discretion to determine whether such an error was harmless. When the ALJ "has relied on

9

erroneous legal standards in assessing the evidence, [s]he must reconsider that denial." *Id.* at 1070 (quotation omitted).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* should be **GRANTED**, Defendant's *Motion for Summary Judgment* should be **DENIED**, and this case should be **REVERSED AND REMANDED** for further proceedings consistent with these findings.

**SO RECOMMENDED** on March 13, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).